In the
# United States District Court
## For the Northern District of Ohio
### Eastern Division

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | CASE NO.  1:23 CR 462-BYP-6 |
| PLAINTIFF ) | |
| vs. ) | **JUDGE BENITA Y. PEARSON** |
| ) | |
| **STEVEN ARMSTRONG** ) | **SENTENCING MEMORANDUM** |
| DEFENDANT ) | of Steven Armstrong |
| ) | Sentencing scheduled:  September 26, 2024 |
| _____ ) | |

NOW COMES THE DEFENDANT, STEVEN ARMSTRONG, by and through his

CJA attorney, Richard P. Kutuchief, and respectfully submits for this Court's

consideration the factors relevant to the sentence to be imposed upon Mr. Armstrong

pursuant to **18 U.S.C. §3553(a)**.  Also submitted are additional facts relevant to the

instant case and important to Steven Armstrong's life history as contained in the

Defendant's Presentence Investigation Report.

Mr. Armstrong here requests that the Court sentence him in accordance with the

stipulations and agreements entered into in the Plea Agreement accepted by and filed

with the Court on June 20, 2024.  Doc #: 115 PageID #: 523-534.

*Rule 11(c)(1)(B)* of the *Federal Rules of Criminal Procedure* states:

**(c) Plea Agreement Procedure.**
**(1) *In General.*** An attorney for the government and the defendant's attorney, or the
defendant when proceeding pro se, may discuss and reach a plea agreement. The
court must not participate in these discussions. If the defendant pleads guilty or nolo
contendere to either a charged offense or a lesser or re- lated offense, the plea
agreement may specify that an attorney for the government will:

(A) not bring, or will move to dismiss, other charges;

(B) recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court);

In ¶ 14 of the Plea Agreement, the parties agreed that they would recommend that the Court impose a sentence within the range and of the kind specified pursuant to the advisory Sentencing Guidelines, and that neither party will recommend or suggest in any way that a departure or variance is appropriate.

The parties excepted, however, that a departure under U.S.S.G. § 3B1.2(b) for minor participant as authorized in ¶ 17 of the agreement could be argued by Mr. Armstrong.  There the Government agrees that Mr. Armstrong reserves the right to request a 2-level departure under U.S.S.G. § 3B1.2(b) for being a "minor participant", with the understanding that the Government will oppose the request for this departure.

Mr. Armstrong submits that said departure would achieve and serve the purposes required of *18 U.S.C. 3553(a)*, that is, a sufficient but not greater than necessary sentence.

I.   **INTRODUCTION**

   A. **Summary of Steven Armstrong's indictment behavior**

Mr. Armstrong was involved in a group of people whom the Government indicted under a conspiracy theory and claim.  He has accepted his responsibility in the role of his participation in the conspiracy.  He has plead guilty to Count 8 of the Indictment.  In essence, the group was involved in the sale of obtaining firearms and then selling the

2

firearms.   Steven is charged with selling a conversion device making the gun into a "machine gun".

## B.  Statement of the Case

On August 23, 2023, Mr. Armstrong was charged by way of indictment with being involved in a business of importing, manufacturing, or dealing in firearms without a Federal Firearms License.  The indictment included Mr. Armstrong and six others and resulted in a 14 count indictment.  Mr. Armstrong is charged as follows:

**Count 1**:
Conspiracy to Possess Machine Gun, 18 U.S.C. § 371

**Count 2**
Conspiracy to Engage in the Business of Importing, Manufacturing, or Dealing in Firearms without a Federal Firearms License 18 U.S.C. § 371.

**Count 8**:
Illegal Possession of a Machine Gun
21 U.S.C. § §§ 922(o) and 924(a)(2)

**Count 9**:
Felon in Possession of a Firearm
18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(a)(8)

Steven has been in detention on the within matter since the date of his arrest on August 30, 2024 and was then arraigned with an order of detention on June 1, 2022. Doc #:81 PageID #: 461.

Proceedings were had, discovery received, and the parties engaged in negotiations, and did reach a written plea agreement and with Notice of Intent to plead, the Court did hold a Change of Plea hearing at which time the Court did conduct a colloquy and Mr. Armstrong entered a plea of guilty to Count 8 of the Indictment at the hearing of June 20, 2024.  Mr. Armstrong was referred for a Presentence Investigation Report, hereinafter also "PSR", and sentencing set for September 26, 2024.

3

The United States Probation Office did prepare a First Disclosure of PSR on August 8, 2024.  Doc#: 126 PageID #: 621.  No objections were filed and on September 11, 2024, the Final PSR was entered and subsequently unsealed.  Doc #: 142 PageID #: 865.

## C.  Steven Armstrong, the Individual

Steven Armstrong is a young man, being 19 years of age at the time of his arrest, and is 20 years at the time of sentencing. He has matured and taken the time in detention seriously, and has made strides in efforts to better himself.  He has demonstrated remorse, and learned from the sting of detention resultant from the punishment so far instilled.

Indeed, a month after his arrest, Steven submitted to the Court on his own action without any consult of counsel, a letter entitled "Motion For Acceptance of Responsibility". In that letter, Steven acknowledged his behavior, admitted to the charges, and clearly stated that he accepted responsibility for his acts alleged in the indictment.

The importance of this letter reflects the maturity and insight demonstrated by Steven Armstrong in response to his condition of being charged in the United States District Court.  He has made no excuses for his acts and behavior.

Steven was born in Cleveland, Ohio to LaShonda Williams and Steven Armstrong Sr, who both still live in Cleveland.  Steven has 10 siblings.  He is fortunate that there was no drug abuse nor violence in his childhood home. He grew up in a rough neighborhood, resulting in a childhood he characterizes as "traumatizing" as he watched close associates killed by violence.  He experienced shootings, kidnappings, and

4

robberies, and in 2017 and also 2018, he was shot at with a firearm, but not struck with a bullet on either occasion.  He indicated that he was the target as he was walking through an old neighborhood.

Again in 2021, Steven was shot at, and although not struck with a bullet, his younger sister was struck with a bullet in her leg.  Steven portrayed the reality of several occasions when he was targeted by gun violence.

Steven reports that he does not have any current health issues or concerns nor health issues that limit his activity or ability to work.

Steven attended Collinwood High School in Cleveland.  He did not graduate due to the arrest for the instant offense.  He participated in basketball in school, and has indicated that he is interested in obtain his GED in the future.  He also hopes to obtain vocational training in construction or plumbing.

Steven was employed at Wendy's from 2022 to 2023, but had to quick due to a lack of transportation.

Steven has never been married, and is not currently in a relationship, and has no children.  He helps raise his five younger siblings, however.  He resided at the time of his arrest in East Cleveland area, with his mother and her four youngest children aforesaid.  Steven enjoys pets and reports there are friendly cats in the home, and no weapons.

Steven has a minimal history, although his conviction is significant as a Felony of the 2nd Degree.  It is notable, however, that despite the level of felony conviction, he was sentenced to a term of two years probation and not prison.  He did receive a

Community Control Violation and an outstanding capias remains. As such, he has one criminal history point placing him in Criminal History Category I.

### D.  Statement of the Facts

The Presentence Investigation Report (PSR), Doc#: 142 Page ID #: 865, contains the following Offense Conduct at paragraph 7, PSR at page 3, and describes the general nature of the conspiracy as a whole:

None of the defendants named in this case were licensed firearm importers, manufacturers, or dealers. From June 1, 2023, to August 17, 2023, the defendants in this case orchestrated the sale and distribution of firearms to buyers who were undercover law enforcement officers. During some sales, the undercover agents advised the defendants that the sold firearms would be transported to Canada. The defendants communicated with each other and potential customers through the use of cell phones and other social media applications.

In total, this case involved the sale of twenty-nine firearms, seven of which met the federal definition for machineguns.

As pertains to his role in the Conspiracy, ¶ 11 of page 4 in the PSR states:

Terrez Wilson, also known as "Twin," Brandon Kimbrough, and **Steven Armstrong**, also known as "Steve," were sellers who were originally solicited by Berry; and each participated in one sale. Wilson's and **Armstrong's** respective sales involved machinegun conversion devices.

It is significant that Steven participated in only "one sale".

¶ 13 on PSR page 4 continues and states:

On June 30, 2023, Berry sold UAs a Polymer 80 firearm, which was actually **Armstrong's** firearm. Berry provided UAs with **Armstrong's** contact information and following the sale, **Armstrong** contacted UAs. **Armstrong** stated he could obtain and sell "switches, ghost glocks, y'all feel me?" He described how the MCD would be best used on a 9mm pistol, as other calibers would require one to "shave the Glock part down." **Armstrong** indicated the MCD would allow a firearm to fire "thirty, fifty, no jams." **Armstrong** sold agents the MCD shortly thereafter. The MCD **Armstrong** sold to agents met the federal definition of a machinegun. On August 30, 2023, **Armstrong** was arrested at his mother's residence without incident.

6

¶ 14 on PSR page 5 concludes Steven's role:

Berry orchestrated the sale of firearms with UAs on June 30, 2023. On that date, Berry sold UAs a Polymer 80 pistol for $720. Investigators learned that the pistol was actually **Armstrong's** firearm, as Berry was compensated $120 for orchestrating the sale, and the remainder of the funds were provided to **Armstrong**. During the sale, the UA told Berry that the UA trafficked firearms into Canada. Following the sale, Berry provided UAs with **Armstrong's** contact information. Subsequently, **Armstrong** contacted the UAs and advised he could obtain and sell "switches, ghost glocks, y'all feel me?" **Armstrong** described how MCDs would be best used on 9mm pistols, as other calibers would require one to "shave the Glock part down." **Armstrong** subsequently met with UAs on June 30, 2023, and sold a MCD for $500. **Armstrong** indicated to UAs that the MCD would allow a firearm to fire "thirty, fifty, no jams." The MCD **Armstrong** sold to agents met the federal definition of a machinegun. On August 30, 2023, **Armstrong** was arrested at his mother's residence without incident.

It is notable that it was Mr. Berry who "orchestrated the sale of firearms with UAs" on June 30, 2023.

## II.  ACCEPTANCE OF RESPONSIBILITY

Mr. Armstrong was succinct and synoptic in articulating his feelings about what he has done in this case when he stated in the PSR in ¶17 page 5 of the PSR:

*"I, Steven Armstrong, accept the responsibility of the crime I committed, and I can't be mad. I kind of knew what I signed up for, everybody makes mistakes might even be two. But my point is everybody makes a mistake in their life, but you live and you learn. I've been incarcerated a full year now I can say I learned from my mistakes. I am ready to begin my new journey, begin a new life, and take care of my baby brother and sisters. I can honestly say I'm ready to accept responsibility. I hope this mistake doesn't define who I am. I still can lead by example. I'm going to say it one more time, everybody makes mistakes in life."*

Again, it is notable that Steven also wrote his acceptance aforesaid on October 23, 2023 accepting responsibly nearly immediately after being charged and arrested.

Steven's acceptance statement in the PSR is from him directly without any influence or assistance from Counsel.  His articulation of knowing what he got into, of how he has learned from his mistake, and how he has stepped up to acknowledging his

acts, is very poignant and impressive. It is notable that he says "i can't be mad" and how he identified his "mistake", how he has learned from it, and how he hopes that "this mistake doesn't define who I am. I still can lead by example."

## III. ARGUMENT AS TO SENTENCE

Mr. Armstrong has been locked up for more than one year of his young life. This has been greatly impacting on him.

Without minimizing or making excuses, Steven's behavior and interaction as found in the factual basis is not the worst form of behavior. His sale involved machine-gun conversion devices. There is generally one interaction on June 30, 2023 where Mr. Berry sold a Polymer 80 pistol belonging to Steven, afterwhich Steven sold a MCD "conversion device" to undercover agents which allows a firearm to become a "machine gun" type gun. He made $500.00 from the conversion device, and was given $600.00 for the Polymer sale.

### Minimal Role

Mr. Armstrong submits that his participation, his role in this conspiracy, is as a "minor participant" pursuant to the United States Sentencing Guidelines and the applicable law.

The parties have agreed in the plea agreement at ¶ 17 Doc#: 115

PageID #:527 a Stipulated Guideline Computation PSR page 3:

**USSG §2K2.1: Steven Armstrong**
Base offense level-Title 26 firearm and prohibited person  20

Acceptance of Responsibility                                                    -3
**Total Offense Level                                                              17**

8

Notwithstanding, the parties also agreed that Mr. Armstrong may argue and request a two-level departure under USSG §3B1.2(b).  This section states:

### §3B1.2.   <u>Mitigating Role</u>

Based on the defendant's role in the offense, decrease the offense level as follows:

(b)     If the defendant was a minor participant in any criminal activity, decrease by **2** levels.

The application notes discuss this section and gives direction as follows:

(C)   <u>Fact-Based Determination</u>.—The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.

In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

(i)     the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)     the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)     the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)     the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)     the degree to which the defendant stood to benefit from the criminal activity.

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

9

Clearly the factual basis and the offense conduct supports Steven's participation and acts as a minor participant—one sale, relatively small amount of financial benefit.

The totality of this particular case shows that Steven knew his actions clearly, but managed to keep his involvement with "only" selling one conversion device. There is no support that he was a participant in planing or organizing the criminal activity, in that when he interacted with the agents, he initiated to them his ability to obtain a conversion device.

Steven was not instrumental in the big picture of the business of selling these guns. It was Mr. Berry who orchestrated this one time event.   As such, he was not involved nor did he exercise decision-making authority nor influence the exercise of decision making authority.  The nature and extent of his participation in the business is simply minimal and he hardly benefited from the conspiracy making only $500.00 for the conversion device, or some portion of the $700.00 for the plastic gun sale, to wit:  $600.00.

In the Plea Agreement in ¶ 22, the factual basis and relevant conduct, there described, supports the fact based determination that Steven's participations was as a minor participant.  He had a firearm defined as a "machinegun" under the law as a result of the conversion device possession and sale—regardless of the definition, he did not have a "machinegun" firearm that shoots.  Steven showed up with Mr. Berry, for the sale of his Polymer 9mm pistol and Steven said he could get a machinegun conversion device and did so get one and sold it to agents for $500.00.  He admitted

10

that the Polymer gun sold was his despite being sold by Mr. Berry.  The conversion

device is agreed to be a "machinegun" as defined in 26 U.S.C. § 5845(b).

 A. *U.S.S.G.* **Offense Level Computation.**

Mr. Armstrong submits that the proper Offense Level Computation, with

acceptance reduction, should be departed downward to Offense Level 15 as a result

of his minor participation in this conspiracy and indictment. This would best serve the

requirements of sentencing by 18 U.S.C. §3553(a).

 B. *U.S.S.G.* **Criminal History Category.**

As found in the PSR at page 7, ¶ 34, Mr. Armstrong falls in  Criminal History

Category of I.

According to the United States Sentencing Table, based upon a total offense

level of 15 and a criminal history category of I, the guideline imprisonment range is **18**

**months to 24 months**.

IV.     **LAW.**

**Section 3553(a)** of **18 U.S.C.** sets out the factors to be considered by the court

as follows:

> The court shall impose a sentence sufficient, but not
> greater than necessary, to comply with the purposes set
> forth in paragraph (2) of this subsection. The court, in
> determining the particular sentence to be imposed, shall
> consider –
>
> (1) the nature and circumstances of the offense and the
> history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to:
>
>> (A) to reflect the seriousness of the offense, to
>> promote respect for law, and to provide just
>> punishment for the offense;

11

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant;

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available.

The Court is also required to consider the sentencing guidelines, the need to avoid unwarranted sentencing disparities among similarly situated defendants, and the need to provide restitution. **18 U.S.C. § 3553(a)(4) to (7).**

Mr. Armstrong submits that the guideline analysis, *supra,* is fair and appropriate for the circumstances in the within matter and will not only comply with, but also serve, the requirements of **18 U.S.C. §3553(a)**.

## V.  SENTENCING REQUEST

Unlawful gun sales, and the business of machinegun sales and conversion devices, cannot be used as excuse for criminal behavior no matter how one portrays it. Yet, when one who is caught, accepts his reality, accepts his responsibility, has insight into his acts, and has a plan for change, then the sentencing structure should so reflect.

More so, when one is charged in Federal Court, mitigating circumstances relative to sentencing guidelines are written for a reason and a purpose, and the case of Steven Armstrong is an individual for which a mitigating role determination should be given.

Mr. Armstrong asks the Court for a sentence of 15 months in accord with the arguments presented in this Memorandum.

12

## VI.  CONCLUSION

Mr. Armstrong does not seek to excuse his behavior because of his presentation in this memorandum.  He is not looking for excuse, and he has made that clear in his statements—he is not mad, and he acknowledges the mistake he has made and its serious nature.  Yet, it should not define him, as he also says.  He has been forthright in his determination of facing up to what he has done, excepting his part in this indictment.

For these reasons, Steven Armstrong asks that the court to depart from the sentencing offense level.  He submits that a sentence of 15 months is the appropriate sentence under Criminal History I, <u>in this particular case</u>.  Steven Armstrong is a minor participant in this indictment conspiracy.

Such sentence would be the fair thing to do and the right thing to do as well.

Respectfully submitted,

/s/ Richard P. Kutuchief

_____
RICHARD P. KUTUCHIEF/0025199
Attorney for Defendant Steven Armstrong
The KFarm
3351 Cormany Road
Coventry Township, Ohio 44319
330.762.1134
justuse@aol.com

### Proof of Service

I hereby certify that on this 19th day of September, 2024, a copy of the foregoing was sent to AUSA Kelly L. Galvin at her email and filed electronically.  Parties may access this filing through the court's system.  Notice of this filing will be sent by operation of the court's electronic filing system.

/s/Richard P. Kutuchief

_____
RICHARD P. KUTUCHIEF/Sup.Ct.#0025199